MAGDALENA HOPMANS, Plaintiff, *v.* LOUISA D. TEUSCHER, Defendant.

Supreme Court, Erie County, February 2, 1928.

**Mortgages — cancellation — action for cancellation and discharge of mortgage on ground of usury — plaintiff, under terms of contract for purchase of property, agreed to raise by second mortgage sums sufficient to make up total of $6,400 — on closing date plaintiff had paid sum sufficient so that with second mortgage total consideration was approximately $6,900 — evidence fails to disclose such direct loan as would avoid mortgage on ground of usury.**

Plaintiff, who, under the terms of a contract for the purchase of real property, agreed to raise by a second mortgage a sum sufficient to make up a total of $6,400 for the property, but on the closing day paid a sufficient sum of money so that with the second mortgage the total consideration that she had parted with in the transaction, by which she acquired title to the property, was approximately $6,900, is not entitled to a judgment canceling and discharging of record said mortgage, in the absence of proof that there was any such direct loan as would avoid the mortgage on the ground of usury.

ACTION for the cancellation and discharge of record of a mortgage executed by the plaintiff to Thomas B. Douglas, and afterwards assigned to the defendant, on the ground of usury.

*Robert H. Mahaney*, for the plaintiff.

*Julius A. Schreiber*, for the defendant.

CHURCH, J. The facts in this case are, for the most part, undisputed. The mortgage in suit, bearing date January 14, 1926, was given by the plaintiff, Magdalena Hopmans, to Thomas B. Douglas, recites an indebtedness of $2,500, and further recites that " this mortgage is given to secure a part of the purchase price of the premises above described." The assignment of this mortgage bearing date the 15th day of January, 1926, and acknowledged on the 15th day of January, 1926, was executed by Thomas B. Douglas to the defendant. It developed on the trial that under date of November 27, 1925, plaintiff made a contract with the said Douglas and wife for the purchase of the real property covered by the mortgage sought to be avoided for a consideration of $6,400, payable, $300 on execution of the contract, " $3,600 to be paid upon closing, $2,500 of the $3,600 to be paid upon closing, is, to be raised by the securing of a second mortgage upon the premises by the purchaser. In the event of the inability of the purchaser to place the second mortgage, the $3,600 is to be paid upon deed being given." The time of closing was to be " on or about the 10th day of January, 1926, and the place the office of Percy S. Lansdowne, 807 D. S. Morgan Building." It is undisputed that on the day of the execution of the mortgage in question the plaintiff and the defendant were both at the office of Mr. Lansdowne, the place named for closing the land contract in the purchase of the real estate described therein and in the mortgage involved in this litigation, for the purpose of, as the plaintiff expresses it, " closing the deal." The deed and the mortgage were both executed that day, and on the following day the assignment of the mortgage from Douglas to the defendant was executed, as was also an estoppel certificate, as shown both by its date and the date of the acknowledgment. The payment of $300 was made at the time of the execution of the contract and $1,000 had been paid in all at the time of the meeting in Mr. Lansdowne's office on January fourteenth. At the time of the closing on the fourteenth day of January the plaintiff paid a sufficient sum of money so that, with the $2,500 second mortgage, the total consideration which she had parted with in the transaction by which she acquired title to the property covered by the mortgage in suit, was approximately $6,900.

There is some dispute between the plaintiff and the defendant as to a telephone talk had some time prior to the execution of the mortgage in suit, whereby plaintiff claims defendant demanded twenty per cent as the consideration of the loan, which conversation and demand are absolutely denied by the defendant; and there is also some dispute as to just what occurred in the lawyer's office at the time of closing the transaction.

18

Supreme Court, February, 1928.       [Vol. 131

If the defendant had directly advanced to the plaintiff $2,000, in consideration of the execution of a $2,500 mortgage, it would, of course, be usury under the law of this State. This court, however, cannot gather from the evidence submitted to it that there was any such direct loan as would avoid this mortgage on the ground of usury. This court believes that the foundation of this whole arrangement was the contract for the purchase of the real property in question.

The plaintiff, by that contract, agreed to raise, by a second mortgage, a sum sufficient to make up a total of $6,400 for the property. It was immaterial to the seller how this money was raised, and he apparently lent himself to the scheme of accepting a purchase-money mortgage and disposing of the same, in order that he might be paid the money due under his contract. I do not find from this that the defendant was necessarily a party to this transaction, but I am of the opinion that the plaintiff had agreed to execute such paper as might be necessary and in such an amount as necessary, in order to secure at least $6,400 for the seller. In other words, if she paid cash, she could purchase the property for $6,400. If she obtained credit, it might be necessary for her to pay $500 or even $1,000 more than the amount stated in the contract as the cash price. Such a transaction has been held to be legal in this State and not a violation of the Usury Law. I refer to the case of *Brooks* v. *Avery,* which, although decided a long while ago, seems still to be the law of this State. This is found in volume 4 of the New York Reports at page 225. In that case, which is very much like the case at bar, a $12,000 mortgage was executed, in order that $10,000 might be obtained for the purpose of carrying out an agreement of purchase similar to the one under consideration here, the court saying under those circumstances: " The transaction between Williams and Samain, so far from being tainted with usury, is shown to be nothing more than the ordinary case of an owner of property, desirous to sell, making a difference in price between a sale for cash in hand and a sale on time; with the further caution, not to sell absolutely, till he ascertains that the security proposed to be taken for the price on time, will sell for a sum in cash equal to the sum he is willing to sell for being paid cash in hand: a caution which the owner has a legal right to exercise without being liable to have usury successfully imputed in the contract."

The lawyers having the supervision of the closing of the transaction involved in this litigation, in the judgment of this court, worked it out in a manner which they deemed, and which this court deems, to have been legal and proper and untainted with

usury.  The fact that the plaintiff, at a subsequent date, made a payment on the principal of the mortgage in suit would seem to indicate that up to that time at least the question of avoiding the mortgage had not entered into her calculations.

Having reached the determination outlined above, it follows that the complaint of the plaintiff should be dismissed, and findings and judgment submitted accordingly.